Filed 4/29/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JUAN AYALA et al., <br><br>     Petitioners, <br><br>     v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br>     Respondent; <br><br> THE PEOPLE, <br><br>     Real Party in Interest. | D077460 <br><br><br> (San Diego County <br>  Super. Ct. No. CD283843) |
| STORMY ANDERSON et al., <br><br>     Petitioners, <br><br>     v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br>     Respondent; <br><br> THE PEOPLE, <br><br>     Real Party in Interest. | D077461 <br><br><br> (San Diego County <br>  Super. Ct. No. SCD282146) |

ORIGINAL PROCEEDINGS in mandate.  Lorna A. Alksne, Judge.  Petitions denied.

Randy Mize, Public Defender, and Whitney N. Antrim, Deputy Public Defender, for Petitioners.

No appearance for Respondent.

Summer Stephan, District Attorney, Mark A. Amador, Linh Lam, and Marissa Bejarano, Deputy District Attorneys, for Real Party in Interest.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Holly D. Wilkens and Michael T. Murphy, Deputy Attorneys General, as Amicus Curiae.

In these proceedings, we interpret Emergency Rule 4, adopted by the Judicial Council of California in response to the ongoing emergency situation in this state caused by the COVID-19 pandemic.[1]  Emergency Rule 4 establishes a statewide Emergency Bail Schedule.  The Emergency Bail Schedule sets bail for all misdemeanor offenses, felony offenses, and violations of postconviction supervision at zero dollars (zero bail), except as specified in the rule.

The San Diego County Superior Court, through its presiding judge, implemented Emergency Rule 4 in General Order No. 041320-42.  Among other things, the order established a procedure for handling persons arrested prior to implementation of the Emergency Bail Schedule.  These persons were to be released on zero bail, unless the

---

[1]     The emergency rules related to the COVID-19 pandemic, including Emergency Rule 4, are set out in the California Rules of Court, Appendix I.

prosecuting agency notified the custodial officer that the agency would be requesting an increase in bail, a " 'no bail' " hold, or the imposition of conditions of release.  The order specified that the Emergency Bail Schedule should be implemented in the same manner as the regularly adopted San Diego County bail schedule and asserted that each court "retains the traditional authority in an individual case to depart from the bail schedule or impose conditions of bail to assure the appearance of the defendant or protect public safety."

Petitioners challenge the superior court's implementation order as inconsistent with Emergency Rule 4.  They contend that bail for offenses and violations covered by the rule must be set at zero dollars, and the superior court has no authority to increase bail or impose conditions in an individual case.  They also contend the implementation order, including the remote hearings contemplated therein, violate various constitutional protections.

We conclude the implementation order is not inconsistent with Emergency Rule 4. The history and language of the rule show that the Judicial Council intended to adopt a statewide bail schedule, which like countywide bail schedules sets the *presumptive* bail amount for the covered offenses and violations.  The Judicial Council did not intend to suspend the array of statutes governing bail, as well as the superior court's inherent authority, which allow the court to depart from the scheduled bail amount or impose bail conditions in individual cases under appropriate circumstances.  We further conclude petitioners have not shown the implementation order or its procedures violate any

guarantees of the federal or state constitutions, at least on the current record. We therefore deny the petitions.

## FACTUAL AND PROCEDURAL BACKGROUND

A state of emergency exists in the State of California as a result of the ongoing COVID-19 pandemic. Federal, state, and local officials have undertaken extraordinary measures to mitigate its spread. In Executive Order N-38-20, the Governor of California conferred on the Judicial Council unprecedented authority to promulgate rules governing court administration, practice, and procedure as necessary to address the emergency. The executive order provides that, to the extent any such rule adopted by the Judicial Council would be inconsistent with any statute concerning civil or criminal practice or procedure, the relevant statute or portion thereof is suspended to resolve the inconsistency. The executive order states, "The purpose of this paragraph is to afford the Judicial Council and its Chairperson maximum flexibility to adopt any rules concerning civil or criminal practice or procedure they may deem necessary to respond to the COVID-19 pandemic,

4

while ensuring that the rules adopted 'shall not be inconsistent with statute,' as provided in Article VI, section 6 of the California Constitution."[2]

Pursuant to this authority, and its constitutional obligation to "adopt rules for court administration, practice and procedure" (Cal. Const., art. VI, § 6, subd. (d)), the Judicial Council considered and adopted eleven emergency rules covering various aspects of civil and criminal practice, including Emergency Rule 4. In a report to the Judicial Council recommending adoption of the emergency rules, the chairs of the Judicial Council's six internal committees outlined their rationale: "The continuous operation of our courts to provide due process and protect the public is essential for our constitutional form of government; however, courts are clearly high-risk places during this pandemic because they require gatherings of judicial officers, court staff, litigants, attorneys, witnesses, defendants, law enforcement, and juries in numbers well in excess of what is allowed for gathering under current executive and health orders. Indeed, many court facilities in California are ill-equipped to implement social distancing and satisfy other public health requirements necessary to protect people involved in court proceedings and prevent the

---

[2] We hereby take judicial notice of the Governor's executive order. (Evid. Code, § 452, subd. (c); *Sierra Club v. County of San Diego* (2014) 231 Cal.App.4th 1152, 1157, fn. 1.) As authority for the order, the Attorney General and the District Attorney cite Government Code section 8571. That section provides, "During a state of war emergency or a state of emergency the Governor may suspend any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency . . . where the Governor determines and declares that strict compliance with any statute, order, rule, or regulation would in any way prevent, hinder, or delay the mitigation of the effects of the emergency." The parties do not challenge the Governor's authority to issue the executive order or the Judicial Council's authority to adopt Emergency Rule 4. We therefore need not consider the validity of the executive order or the rule.

5

further spread of COVID-19." In particular, "[t]he spread of the virus has hit California's inmate population as well as staff members in the prison system. Many inmates have ongoing court cases and courts cannot be assured that safe social distancing can be maintained with the transport of in-custody defendants and the holding cells adjacent to or within courthouses."

The report noted that the pretrial custody decisions of trial courts can affect the spread of COVID-19. "During the COVID-19 pandemic, trial courts have a vital role to play in balancing public safety and public health by assisting to safely reduce jail populations in a manner that protects the health of inmates, jail staff, those who transport defendants to courts, and others as individuals leave jail and return to their communities. The courts can assist by permitting more persons accused of misdemeanors and other lower-level offenses to be released from jail custody prior to arraignment, which in turn will reduce the immediate burden on the courts to conduct arraignments and preliminary examinations within compact timeframes."

Prior to the Governor's executive order, the Chief Justice recommended that trial courts reduce the incarcerated population by adopting emergency bail schedules that would result in fewer people in custody based on their inability to post bail. Her recommendation advised courts to "[r]evise, on an emergency basis, the countywide bail schedule to lower bail amounts significantly for the duration of the coronavirus emergency, including lowering the bail amount to $0 for many lower level offenses—for all misdemeanors except for those listed in Penal Code section 1270.1 and for lower-level felonies."

6

The committee chairs' report noted that, "[f]ollowing this advisory, some courts adopted emergency bail schedules, but during this time there is a need for greater uniformity throughout the state." They therefore proposed that the Judicial Council "adopt an emergency rule of court that provides for a statewide Emergency Bail Schedule." The emergency rule would adopt an Emergency Bail Schedule "to set bail at $0 for misdemeanors and certain felonies . . . ." The Emergency Bail Schedule would apply "[p]ursuant to Penal Code section 1269b . . . to any accused currently held in county jail custody charged with an offense covered by the schedule." The regularly adopted countywide bail schedule would apply to any other offenses. The emergency rule would require "[b]ail to be set at $0 for violations of misdemeanor probation, whether the arrest is made with or without a bench warrant. For violations of felony probation, parole, post release community supervision, or mandatory supervision, bail must be set in the same amount as bail for the underlying substantive charge of conviction under the Emergency Bail Schedule."

The Judicial Council adopted the recommended rule as Emergency Rule 4. It provides, "Notwithstanding any other law, this rule establishes a statewide Emergency Bail Schedule, which is intended to promulgate uniformity in the handling of certain offenses during the state of emergency related to the COVID-19 pandemic." (Emergency Rule 4(a).) "Under the statewide Emergency Bail Schedule, bail for all misdemeanor and felony offenses must be set at $0, with the exception of only the offenses listed below . . . ." (Emergency Rule 4(c).) Likewise, "[u]nder the statewide Emergency Bail Schedule, bail for all violations of misdemeanor probation, whether the arrest is with or

7

without a bench warrant, must be set at $0." (Emergency Rule 4(f)(1).) "Bail for all violations of felony probation, parole, post-release community supervision, or mandatory supervision, must be set in accord with the statewide Emergency Bail Schedule, or for the bail amount in the court's countywide schedule of bail for charges of conviction listed [in the exceptions to the statewide Emergency Bail Schedule]." (Emergency Rule 4(f)(2).) Even for covered offenses, Emergency Rule 4 does not affect the constitutional authority of superior courts to deny bail altogether in limited circumstances: "Nothing in the Emergency Bail Schedule restricts the ability of the court to deny bail as authorized by article I, section 12, or 28(f)(3) of the California Constitution." (Emergency Rule 4(d).)[3]

Emergency Rule 4 directed the superior courts to apply the statewide Emergency Bail Schedule, by no later than 5 p.m. on April 13, 2020, to every accused person arrested and in pretrial custody and to every accused person held in pretrial custody. (Emergency

---

[3]    The exceptions to the statewide Emergency Bail Schedule—which are not at issue here—are the following: (1) a serious felony, as defined in Penal Code section 1192.7, subdivision (c), or a violent felony, as defined in Penal Code section 667.5, subdivision (c); (2) a felony violation of Penal Code section 69; (3) a violation of Penal Code section 166, subdivision (c)(1); (4) a violation of Penal Code section 136.1 when punishment is imposed under subdivision (c) of that statute; (5) a violation of Penal Code section 262; (6) a violation of Penal Code sections 243, subdivision (e)(1), or 273.5; (7) a violation of Penal Code section 273.6 if the detained person made threats to kill or harm, has engaged in violence against, or has gone to the residence or workplace of the protected party; (8) a violation of Penal Code section 422 where the offense is punished as a felony; (9) a violation of Penal Code section 646.9; (10) a violation of an offense listed in Penal Code section 290, subdivision (c); (11) a violation of Vehicle Code sections 23152 or 23153; (12) a felony violation of Penal Code section 463; and (13) a violation of Penal Code section 29800. (Emergency Rule 4(c).) As noted, for these offenses, the regularly adopted countywide bail schedule applies. (Emergency Rule 4(e)(1).) Each superior court retains the authority to modify its countywide bail schedule for these offenses. (Emergency Rule 4(e)(2).)

Rule 4(b).)  The rule remains in effect "until 90 days after the Governor declares that the state of emergency related to the COVID-19 pandemic is lifted, or until amended or repealed by the Judicial Council."  (Emergency Rule 4(g).)

On April 13, 2020, the respondent superior court adopted its general order implementing Emergency Rule 4.  The order provided that the superior court should apply the Emergency Bail Schedule "in the same manner as the regularly adopted San Diego County Bail Schedule" except as specified in the order.

The order stated, "For persons arrested prior to the effective date and time of this order, bail shall be set in accordance with the [Emergency Bail Schedule].  However, the court retains the traditional authority in an individual case to depart from the bail schedule or impose conditions of bail to assure the appearance of the defendant or protect public safety."

To preserve that authority, the order adopted a procedure for making individualized assessments regarding persons held in custody:  "Persons whose bail is reduced to zero by the [Emergency Bail Schedule] shall be released from custody at 5:00 p.m. on April 15, 2020, or as soon thereafter as is feasible, unless prior to 5:00 p.m. on April 15, 2020, the prosecuting agency notifies the Sheriff that it will be requesting an increase in bail, a 'no bail' hold, or imposition of conditions of release."  The order required that the prosecuting agency provide a list of such objections to defense counsel by the same date and time.  Under the order, the prosecution and defense counsel must meet and confer regarding the objections within 24 hours. If the parties subsequently agree that a person could be released on zero bail under the Emergency Bail Schedule, he

9

or she shall be released by the sheriff.  If the parties agree that a person could be released on increased bail, or subject to conditions, the parties shall submit a stipulation and proposed order to the court to that effect and notify the sheriff.  If the parties cannot agree, and the defendant has not yet been arraigned, "the prosecuting agency shall put the matter on the video-court calendar commencing Monday, April 20, 2020, or as soon as practical thereafter, for arraignment and bail review."  In all other cases where the parties cannot agree, "the matter will be reviewed by a judicial officer via telephone conference as soon as practical."

For newly arrested persons, the order provides that bail must be set in accordance with the Emergency Bail Schedule.  But, as with persons already in custody, the order adopted a procedure for considering departures from the Emergency Bail Schedule and bail conditions:  "Requests for a modification of the bail amount, or for conditions of release, shall be made to the daytime or after-hours duty judge.  If bail is modified, or conditions imposed, the court will notify the Sheriff's Watch Commander at the detention facility where the defendant is housed, and the Sheriff shall note the change on defendant's paperwork, including any release papers."

The San Diego County Public Defender filed an objection to the implementation order.  The superior court, through its presiding judge, set a briefing schedule and hearing

10

on the objection. In a written order after the hearing, the presiding judge overruled the public defender's objection.[4]

Pursuant to the superior court's implementation order, the prosecuting agencies identified between 100 and 200 persons in pretrial custody for whom a bail increase or bail conditions are sought. These individuals, represented by the public defender, now petition this court for a writ of mandate directing the superior court to rescind its implementation order and adopt their interpretation of the Emergency Bail Schedule. They argue that Emergency Rule 4 mandates zero bail for any covered offense or violation, with the only exception being the court's constitutional authority to deny bail altogether. Under their interpretation, the superior court cannot increase bail above zero dollars or impose conditions on bail.

In a second petition, three individuals arrested for violating their postconviction supervision also challenge the superior court's implementation of Emergency Rule 4. They allege that they are being held in custody without bail and the superior court refuses to apply Emergency Rule 4 to them.

We consolidated the proceedings on the two petitions and issued an order to show cause. In this opinion, where it is necessary to distinguish between them, we refer to the first petitioners as the "pretrial petitioners" and the second petitioners as the "postconviction petitioners."

---

[4] For good cause, we grant the district attorney's application to include this order as an exhibit to her return.

11

DISCUSSION

I

*Bail Generally*

The California Constitution provides that a defendant "shall be released on bail by sufficient sureties" unless an exception applies. (Cal. Const., art. I, § 12.) The amount of bail required in a specific case is governed by multiple statutory and constitutional provisions, several aspects of which we describe briefly here.[5]

The superior court judges in each county are required by statute to adopt a "countywide schedule of bail" for bailable felony, misdemeanor, and infraction offenses (except Vehicle Code infractions). (Pen. Code, § 1269b, subd. (c).) "The countywide bail schedule shall contain a list of the offenses and the amounts of bail applicable for each as the judges determine to be appropriate. If the schedule does not list all offenses specifically, it shall contain a general clause for designated amounts of bail as the judges of the county determine to be appropriate for all the offenses not specifically listed in the schedule." (*Id.*, subd. (f).) "In adopting a uniform countywide schedule of bail for all

_____

5    The exceptions to the right to bail are "(a) Capital crimes when the facts are evident or the presumption great; [¶] (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or [¶] (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released." (Cal. Const., art. I, § 12; see *In re White* (2018) 21 Cal.App.5th 18, 24-25, review granted May 23, 2018, S248125; *In re Bright* (1993) 13 Cal.App.4th 1664, 1667 & fn. 4; *In re Nordin* (1983) 143 Cal.App.3d 538, 543.)

bailable felony offenses the judges shall consider the seriousness of the offense charged."
(*Id*., subd. (e).)

The countywide bail schedule sets out the "presumptive" amount of bail for the identified offenses. (*In re Christie* (2001) 92 Cal.App.4th 1105, 1109 (*Christie*).) In general, before a defendant's appearance in court, "the bail shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail for the county in which the defendant is required to appear . . . ." (Pen. Code, § 1269b, subd. (b).)

If conditions warrant, a peace officer may apply for bail in excess of the scheduled amount: "If a defendant is arrested without a warrant for a bailable felony offense or for the misdemeanor offense of violating a domestic violence restraining order, and a peace officer has reasonable cause to believe that the amount of bail set forth in the schedule of bail for that offense is insufficient to ensure the defendant's appearance or to ensure the protection of a victim, or family member of a victim, of domestic violence," the officer may apply for an order setting a higher bail. (Pen. Code, § 1269c.) Likewise, for most offenses, the defendant may apply for release "on bail lower than that provided in the schedule of bail or on his or her own recognizance." (*Ibid*.) If a defendant does not make bail, he is entitled to automatic review of the order fixing the amount of bail. (*Id*., § 1270.2.) In the course of a criminal case, the court may revisit the amount of bail under various circumstances. (See, e.g., *id*., § 1289.)

The court need not adhere to the scheduled amount, but rather has the discretion to make individualized determinations as appropriate. A court's consideration of the

amount of bail in an individual case is governed by mandatory factors identified in the California Constitution: "In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the safety of the victim, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. Public safety and the safety of the victim shall be the primary considerations." (Cal. Const., art. I, § 28, subd. (f)(3).) The bail statutes set out these factors to guide the court's discretion as well. (Pen. Code, § 1275, subd. (a).)

In addition to the amount of bail, courts have the authority to impose conditions related to public safety on persons released on bail. (Cal. Const., art. I, § 28, subd. (b)(3); *In re Webb* (2019) 7 Cal.5th 270, 278.) "Any condition must be *reasonable*, and there must be a sufficient nexus between the condition and the protection of public safety." (*Webb*, at p. 278.)

II

*Interpretation of Emergency Rule 4*

Against this backdrop, the Judicial Council adopted Emergency Rule 4. As noted, Emergency Rule 4 established a statewide Emergency Bail Schedule. (Emergency Rule 4(a).) "Under the statewide Emergency Bail Schedule, bail for all misdemeanor and felony offenses must be set at $0" unless the defendant is charged with certain excepted offenses. (Emergency Rule 4(c).) Under the statewide Emergency Bail Schedule, "bail for all violations of misdemeanor probation, whether the arrest is with or without a bench warrant, must be set at $0" and "[b]ail for all violations of felony probation, parole, post-

14

release community supervision, or mandatory supervision, must be set in accord with the statewide Emergency Bail Schedule, or for the bail amount in the court's countywide schedule of bail for" excepted offenses.  (Emergency Rule 4(f)(1)-(2).)

The parties dispute the meaning of these provisions.  "We independently review interpretations of California Rules of Court, applying the usual rules of statutory construction."  (*In re William M.W.* (2019) 43 Cal.App.5th 573, 583.)  " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.]  'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.]  The plain meaning controls if there is no ambiguity in the statutory language.  [Citation.]  If, however, 'the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " ' "  (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

Petitioners contend the plain language of Emergency Rule 4 compels their interpretation.  In their view, the mandatory language of the rule (e.g., bail "must be set") establishes that the superior court cannot depart from the zero bail amount in the statewide Emergency Bail Schedule.  They argue, "In no uncertain terms, the Chief Justice of the California Supreme Court and the Judicial Council ordered that bail 'must'

15

be set at $0 unless certain exceptions apply." We disagree. The rule does not simply mandate zero bail for the covered offenses, irrespective of the particular facts of each defendant's case. Instead, it adopts a statewide Emergency Bail Schedule, under which bail for the covered offenses is zero dollars. At the very least, the rule's focus on a bail *schedule*, which has an established meaning and function in setting bail that is not mandatory, introduces ambiguity regarding the superior court's authority to depart from the zero bail amount under Emergency Rule 4. The rule can reasonably be interpreted, as urged by the district attorney, to preserve the court's existing authority to increase bail from the scheduled zero bail amount if the circumstances and existing statutes allow such a departure.

The history and structure of the rule show that the district attorney's proposed interpretation is the correct one. The Judicial Council report recommending adoption of the emergency rules emphasized that the Chief Justice had issued an advisory to trial courts to "[r]evise, on an emergency basis, the countywide bail schedule to lower bail amounts significantly for the duration of the coronavirus emergency, including lowering the bail amount to $0 for many lower level offenses . . . ." Because the trial courts do not have the power generally to suspend existing statutes or court rules, the recommended emergency countywide bail schedules would necessarily function in the same manner as existing regularly adopted bail schedules. Namely, trial courts applying such emergency countywide bail schedules could, in appropriate circumstances, increase bail from zero dollars in individual cases or impose reasonable conditions on release.

16

The report noted that "some courts adopted emergency bail schedules, but during this time there is a need for greater uniformity throughout the state." This focus on uniformity is reflected in the first subdivision of the rule, entitled "Purpose," which states, "Notwithstanding any other law, this rule establishes a statewide Emergency Bail Schedule, which is intended to *promulgate uniformity* in the handling of certain offenses during the state of emergency related to the COVID-19 pandemic." (Emergency Rule 4(a), italics added.)

The Judicial Council report and the express purpose of Emergency Rule 4 show that the rule was intended to mandate that the Chief Justice's recommendation be adopted by every trial court in the state in the same manner, i.e., the same offenses would be subject to the same zero dollar scheduled bail amount in every county. The focus on uniformity undermines the petitioners' argument that the statewide Emergency Bail Schedule in Emergency Rule 4 was intended to function differently from existing countywide bail schedules—by depriving trial courts of their established authority to depart from the scheduled bail amount and impose bail conditions. To the contrary, this focus shows that the Judicial Council intended the statewide Emergency Bail Schedule to operate as if each court had adopted it—uniformly—as a countywide bail schedule.

The report specifically invokes Penal Code section 1269b, which mandates the adoption of countywide bail schedules. It states, "Pursuant to Penal Code section 1269b, [the rule would require] the application of the statewide Emergency Bail Schedule to any accused currently held in county jail custody charged with an offense covered by the schedule." The report indicates that, rather than superseding the existing statutes

17

governing the setting of bail, the statewide Emergency Bail Schedule established by the rule was intended to fit comfortably within them.

This interpretation is confirmed by the language and structure of Emergency Rule 4. The rule, after all, does not simply mandate zero bail for the covered offenses. It establishes a statewide bail *schedule* to be applied by trial courts. Absent some persuasive indication to the contrary, we must give effect to the established meaning of this concept and its role in the statutes governing bail. (See *People v. King* (2006) 38 Cal.4th 617, 622 [" ' "The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." ' "].)

Emergency Rule 4 contains no indication that the term *schedule* should be given anything other than its established meaning and significance. The rule directs trial courts to "apply the statewide Emergency Bail Schedule" to certain categories of persons in custody. (Emergency Rule 4(b).) It then describes the substance of the schedule, i.e., zero bail for the covered offenses. (Emergency Rule 4(c).) For excepted offenses, the rule directs trial courts to apply their regularly adopted countywide bail schedules, and courts retain the authority to modify those schedules as needed. (Emergency Rule 4(e).) By establishing a statewide bail schedule and directing courts to apply it, while continuing to apply their countywide bail schedule to excepted offenses, the rule embodies the Judicial Council's intent to create a uniform schedule for the covered

18

offenses—but not to alter the normal function of bail schedules in setting bail for individual defendants under existing statutes.[6]

Petitioners claim that this interpretation leads to "absurd results" because it will not promote a reduction in the jail population. We disagree. Based on the record before us, including the papers submitted by petitioners, numerous individuals in custody in San Diego County have been released under this interpretation of the statewide Emergency Bail Schedule, including dozens of defendants in pretrial custody and two of the three named postconviction petitioners. The effect of the statewide Emergency Bail Schedule is to set the presumptive bail amount at zero dollars for the covered offenses. If bail is to be set above that amount—for example, in the amount previously specified in the countywide bail schedule—it must be justified. (See Pen. Code, § 1269c; *Christie*, *supra*, 92 Cal.App.4th at p. 1110.) The scheduled bail amount matters, both legally and practically. Petitioners have not shown that interpreting the statewide Emergency Bail Schedule as imposing a new scheduled bail amount of zero dollars is so ineffective as to be absurd.

---

[6] Petitioners have submitted a letter written by the district attorney to the Judicial Council commenting on Emergency Rule 4 shortly after its adoption. The letter appears to support petitioners' interpretation of Emergency Rule 4 as mandating zero bail for all covered offenses regardless of an individual defendant's circumstances. In her return, the district attorney disavows the letter. She contends it was sent before her office had the opportunity to review other analyses of the rule and subsequent Judicial Council statements. The letter is not binding on the district attorney, but we have considered it. The letter, as well as similar materials prepared by the sheriff, do not affect our interpretation of the rule.

Petitioners point out that the rule expressly confirms a trial court's ability to deny bail: "Nothing in the Emergency Bail Schedule restricts the ability of the court to deny bail as authorized by article I, section 12, or 28(f)(3) of the California Constitution." (Emergency Rule 4(d).) Applying the principle of *expressio unius est exclusio alterius*, petitioners argue that the inclusion of this exception to the statewide Emergency Bail Schedule shows that the Judicial Council did not intend any other exception, e.g., for bail increases under existing bail statutes. (See *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 424 [" 'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.' "].) Petitioners misapply the principle to Emergency Rule 4. The constitutional authority to deny bail is an exception to the application of bail schedules generally. By enumerating this authority, the rule confirms that the statewide Emergency Bail Schedule yields—as does any other bail schedule—to this constitutional provision. It does not speak to the ability of courts to apply the statewide Emergency Bail Schedule in the same manner as countywide bail schedules, with upward departures where warranted. The constitutional authority to deny bail altogether is not in the same category as the statutory authority to depart from a scheduled bail amount. The enumeration of the first does not imply the exclusion of the second. Likewise, the rule's preservation of the countywide bail schedule (Emergency Rule 4(e)) reflects a limitation of the scope of the statewide Emergency Bail Schedule to certain covered offenses. It does not reflect a limitation on the trial court's power to

20

depart from the scheduled bail amount—whether in the statewide schedule or the countywide schedule—under existing bail statutes.

Petitioners also point out that Emergency Rule 4 supersedes any other laws contrary to its application. (Emergency Rule 4(a).) They argue that, in light of that broad assertion, "reliance on pre-existing Penal Code provisions is misplaced." Setting aside the issue of whether the Governor or Judicial Council could broadly suspend existing bail statutes, the Governor's executive order provides that a "statute is suspended only to the extent it is inconsistent with the proposed rule[.]" The statutes governing departures from scheduled bail amounts are not inconsistent with Emergency Rule 4 for the reasons we have already discussed. Instead, they are complimentary and thus readily harmonized. The statewide Emergency Bail Schedule works in tandem with the existing statutes governing bail, as it was intended to do. Moreover, whatever else may be said about the Governor's power to suspend statutes, we are confident that we must not extend such suspension beyond what is strictly necessary to implement Emergency Rule 4, especially where as here the Judicial Council has not specifically identified any existing statutes that must be suspended. The statute governing countywide bail schedules must be suspended

in part to accommodate the statewide Emergency Bail Schedule, but we will not imply any broader suspension.[7]

The superior court's implementation order adopts the statewide Emergency Bail Schedule and mandates its application "in the same manner" as the regularly adopted San Diego County bail schedule. It directs judges to set bail in accordance with the statewide Emergency Bail Schedule. For persons already in custody, the order creates procedures for determining whether the scheduled zero bail amount will be applied, or whether the court will increase bail or impose conditions. Because Emergency Rule 4 created a statewide bail *schedule*, it does not foreclose the ability of the superior court to depart from the schedule in accordance with existing law in this manner. Petitioners have not shown that the superior court's implementation order is inconsistent with Emergency Rule 4.

Petitioners argue that the procedure for determining whether defendants will be released on zero bail, or whether bail will be increased or conditions imposed, is unauthorized and unconstitutional. Courts have broad inherent powers over their own procedures. " 'It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation

---

[7]    In this context, we are reminded of the rule of statutory construction that strictly limits the implied repeal of one statute by a later statute. " '[A]ll presumptions are against a repeal by implication. [Citations.]' [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476-477.)

before them.  [Citation.]  "In addition to their inherent equitable power derived from the historic power of equity courts, *all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority*.  [Citations.]  'It is beyond dispute that "Courts have inherent power . . . to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council."  [Citation.]'  [Citation.]  That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice.  [Citation.]  'Courts are not powerless to formulate rules of procedure where justice demands it.' " ' "  (*In re Reno* (2012) 55 Cal.4th 428, 522.)

Emergency Rule 4 required the superior court to apply the statewide Emergency Bail Schedule to both new arrestees and individuals already in custody.  (Emergency Rule 4(b).)  For those in custody, the new statewide zero bail schedule was not self-executing.  The superior court properly implemented a procedure to determine which defendants would be released on zero bail and which would not.  The procedure began with the direction that defendants subject to the statewide Emergency Bail Schedule "shall be released from custody" at 5:00 p.m. on April 15, 2020, or as soon thereafter as is feasible.  To prevent release, the prosecuting agency was required to submit an objection to the sheriff by the same date and time.  The prosecution and defense counsel were required to meet and confer regarding the objections within the next 24 hours.  If the parties agreed that a person could be released on increased bail, or subject to

23

conditions, the parties were required to submit a stipulation and proposed order to the court to that effect and notify the sheriff.  If the parties could not agree, the superior court would address the disputes in remote and telephonic hearings.  (We discuss petitioners' objections to these hearings in the next part.)

Petitioners have not shown that these procedures conflict with Emergency Rule 4.  The rule establishes a statewide Emergency Bail Schedule, but it does not dictate the procedures courts must use to apply it to defendants in custody.  The procedure implemented by the superior court was a reasonable exercise of its inherent supervisory and administrative powers.  Petitioners' contrary argument largely relies on their interpretation of Emergency Rule 4 as requiring a defendant's release on zero bail in all cases.  We have rejected that interpretation for the reasons set forth above.

Petitioners rely on *In re Alberto* (2002) 102 Cal.App.4th 421, but it is inapposite.  *Alberto* held that a second judge may not generally reconsider a first judge's bail determination without good cause.  (*Id*. at p. 426.)  If the prosecution had believed the first judge's bail determination was erroneous as a matter of law, its remedy was to file a petition for writ of mandate in the appellate court.  (*Id*. at p. 431.)  Here, there has been no finding by a court that any individual defendant's bail should be set at zero dollars.  Instead, the Judicial Council changed the *scheduled* amount of bail for the covered offenses.  When the court considers the prosecution's objection to the scheduled amount, it is considering bail for the first time under the revised schedule.  It is not reconsidering a prior zero dollar bail determination.

The postconviction petitioners argue that they have been denied the benefit of Emergency Rule 4. They allege the sheriff has "refus[ed]" to apply the statewide Emergency Bail Schedule to violations of probation, parole, and post-release community supervision. In her return, the district attorney disagrees. She maintains that two of the three named postconviction petitioners have been released pursuant to the statewide Emergency Bail Schedule. The third named postconviction petitioner remains in custody on a court-issued arrest warrant. The district attorney contends Emergency Rule 4 allows for continued custody of that individual because it omits mention of a warrant in its subdivision discussing the application of the statewide Emergency Bail Schedule to violations of felony postconviction supervision. (See Emergency Rule 4(f)(2).) In other words, the Emergency Bail Schedule does not apply to postconviction petitioners who were convicted of underlying felonies and arrested pursuant to a court-issued warrant specifying a bail amount (or no bail). Petitioners do not respond to the district attorney's arguments; they simply reassert their belief that the sheriff refuses to apply the statewide Bail Schedule or Emergency Rule 4 to violations of probation, parole, and post-release community supervision. Since it appears the parties agree that Emergency Rule 4 applies to the postconviction petitioners, and indeed two postconviction petitioners have been released under the rule, this issue appears to be moot and we need not consider it further. (See *Epstein v. Superior Court* (2011) 193 Cal.App.4th 1405, 1408-1409.) Specific disputes regarding the application of Emergency Rule 4 to postconviction defendants, if any, may be raised in future proceedings.

25

In their petitions, petitioners also raised a short, nonspecific constitutional challenge to the superior court's implementation order. They summarily referenced the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and article I, sections 14 and 15 of the California Constitution. The thrust of the argument was that petitioners' continued custody was unjust, and they have not been properly arraigned within the time periods set by statute, but petitioners provided no legal authority or argument in support of their constitutional challenge. It was therefore waived. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Crittenden* (1994) 9 Cal.4th 83, 153 [where defendant asserts constitutional challenge "without argument or citation of authority," we generally do not consider such unsupported contentions].) In their reply, petitioners for the first time make specific equal protection, due process, and Eighth Amendment arguments. We normally do not consider arguments made for the first time on reply. (*Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 854, fn. 2 (*Magana*).) Petitioners' contentions raise important issues, but it is precisely because these issues are important that they must be presented and considered in accordance with established appellate procedure, which allows the opposing party a chance to respond. In any event, to the extent petitioners' arguments are predicated on their interpretation of Emergency Rule 4 as requiring zero bail for all covered offenses, they are rejected. To the extent they raise other matters, we will not consider them in this proceeding (*ibid*.),

26

and we express no opinion on the validity of any such arguments which individual petitioners may assert in the future.[8]

In sum, we reject petitioners' contention that the superior court cannot depart from the zero bail amount in the statewide Emergency Bail Schedule in any individual case. To the contrary, the history and structure of Emergency Rule 4 show that the Judicial Council intended the statewide Emergency Bail Schedule to function in the same manner as the countywide bail schedule in each court. The superior court retains the ability to depart from the scheduled zero bail amount or impose bail conditions under appropriate circumstances in an individual case. We likewise conclude that petitioners have not demonstrated that the superior court's implementation order was unauthorized or unconstitutional. Emergency Rule 4 required the application of the statewide Emergency Bail Schedule to defendants already held in pretrial custody. (Emergency Rule 4(b).) The implementation order created a reasonable process for delineating those defendants who could be released on the scheduled zero dollar bail, and those defendants for whom individualized bail decisions would be made after the prosecution requested an upward departure in the scheduled amount or conditions of release.

---

[8] In addition, petitioners contend the implementation order's use of an April 15 date was inconsistent with Emergency Rule 4's direction that courts apply the statewide Emergency Bail Schedule "[n]o later than . . . April 13, 2020." (Emergency Rule 4(b).) Because both dates have passed (and they had passed before the petitions were filed), we can provide no effective relief on this issue. We therefore need not consider this specific contention.

## III

### *Remote and Telephonic Hearings*

The superior court's implementation order contemplates that bail disputes will be handled by either remote or telephonic hearings.  In their petition, petitioners objected to these hearings as unnecessary and unwarranted because, under their interpretation of Emergency Rule 4, the superior court had no power to entertain any objections to the release on zero bail of a defendant charged with a covered offense (except complete denial of bail under article I, section 12 of the California Constitution).  Because we have rejected petitioners' interpretation of Emergency Rule 4, we necessarily reject this contention as well.

In a brief supplemental letter, petitioners objected to the remote hearing procedure as unconstitutional.  Under the California Constitution, "The defendant in a criminal case has the right to . . . be personally present with counsel . . . ."  (Cal. Const., art. I, § 15.) Petitioners also argued that their right to effective assistance of counsel under the U.S. and California constitutions would be infringed by remote hearings.  At the time of the letter, the superior court had not yet held any remote or telephonic hearings.

The emergency rules adopted by the Judicial Council address the use of remote and telephonic hearings.  Emergency Rule 3 authorizes courts to require that judicial proceedings and court operations be conducted remotely, "in order to protect the health and safety of the public, including court users, both in custody and out of custody defendants, witnesses, court personnel, judicial officers, and others . . . ."  (Emergency Rule 3(a).)  A remote proceeding under the rule "includes, but is not limited to, the use of

28

video, audio, and telephonic means for remote appearances; the electronic exchange and authentication of documentary evidence; e-filing and e-service; the use of remote interpreting; and the use of remote reporting and electronic recording to make the official record of an action or proceeding." (Emergency Rule 3(a)(3).)

The superior court's implementation order is not facially inconsistent with Emergency Rule 3. Both recognize the need, and allow for the use, of remote appearances given the ongoing state of emergency related to the COVID-19 pandemic. Indeed, based on their reply, petitioners do not object in general to the use of remote or telephonic hearings under Emergency Rule 3 or the related Emergency Rule 5, which provides for personal appearance waivers by a defendant under various circumstances. Petitioners have therefore failed to establish any basis for relief against the superior court's implementation order itself.

In their reply, petitioners argue that the superior court has not always complied with the consent requirement of Emergency Rule 3. The rule provides, in relevant part, "In criminal proceedings, courts must receive the consent of the defendant to conduct the proceeding remotely and otherwise comply with emergency rule 5. Notwithstanding Penal Code sections 865 and 977 or any other law, the court may conduct any criminal proceeding remotely. As used in this rule, 'consent of the defendant' means that the consent of the defendant is required only for the waiver of the defendant's appearance as provided in emergency rule 5." (Emergency Rule 3(a)(2); see Emergency Rule 5(b)-(c) [describing the nature of valid consent].) Petitioners allege that some remote and telephonic hearings have been held without the consent of the defendant and they attach

29

reporter's transcripts to their reply where such hearings have apparently proceeded without a defendant's consent.

We normally do not consider arguments made for the first time on reply. (*Magana*, *supra*, 22 Cal.App.5th at p. 854, fn. 2.) Here, not only did petitioners not include any argument regarding consent in their petitions, they could not have done so because the hearings had not yet occurred. The evidence they submit in support of their argument was not included in their petitions and likewise did not exist until afterward. Under these circumstances, petitioners' consent arguments are not properly before us and we need not consider them. (*Ibid*.)

Moreover, petitioners have not presented a sufficiently definite controversy for adjudication of their individual claims in this proceeding. "The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes. However, the ripeness doctrine is primarily bottomed on the recognition that judicial decision[-]making is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.)

30

Here, petitioners have not presented an actual set of facts specific to any defendant who did not consent to a remote or telephonic hearing. Petitioners do not seek individual relief for any aggrieved defendant. Instead, they seek a blanket advisory opinion on the practices of the superior court. We cannot offer such an opinion. The infringement of a defendant's constitutional rights, and the prejudice therefrom, cannot be determined in a vacuum. We cannot create binding decisional law on the basis of several transcripts, without any context, and the broad allegations of counsel. We cannot grant relief to any specific defendant without a record of the factual and legal circumstances at issue as they relate to that particular individual.

This conclusion is without prejudice to petitioners' ability to challenge, by petition for writ of mandate or otherwise, any order or proceeding they claim violates their constitutional or statutory rights. We express no opinion on the validity of any such challenge.

DISPOSITION

The petitions are denied.  This opinion will be final as to this court five days from its filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  Finality will not be extended by this court's April 15, 2020 implementation order.


GUERRERO, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.